**HIGHLAND INDUSTRIAL PARK, INC., an Arkansas Corporation,**
**Plaintiff,**

v.

**BEI DEFENSE SYSTEMS CO., an Delaware Corporation, Defendant.**

No. 99–1096.

United States District Court,
W.D. Arkansas,
El Dorado Division.

Feb. 1, 2002.

---

## MEMORANDUM OPINION

BARNES, District Judge.

On this 31st day of January, 2002, COMES ON FOR CONSIDERATION Defendant BEI Defense Systems' ("BEI") Motion for Partial Summary Judgment on the Measure of Damages (doc. 51) and Plaintiff Highland Industrial Park's ("Highland") Countermotion for Partial Summary Judgment on the Measure of Damages (doc. 55). BEI requests that the Court find as a matter of law that the proper measure of damages in this action is the difference between the fair market value of the property before and after the alleged damage (diminution in value). Highland counters that the appropriate measure of damages is the cost of restoration plus any partial loss of value of the property after the restoration. The Court

has reviewed these Motions and their Briefs as well as BEI's Reply (doc. 63), Supplemental Memorandum in Support (doc. 77) and all other supporting documentation. The Court also held a pretrial conference on January 26, 2001 to hear further arguments of counsel. The Court, being well and sufficiently advised by the excellent briefing and presentation of both parties, finds the issue is ripe and the Court is ready to rule. Because the Court finds that there is no genuine issue of fact material to the nature of the contamination or the potential for its remediation, Highland's Motion will be granted in part and denied in part and BEI's motion will be denied.

## BACKGROUND

This is an industrial land contamination case between the plaintiff/former-lessor, Highland, and the defendant/former-lessee, BEI. Highland alleges that BEI, a military rocket manufacturer, systematically dumped and burned hazardous wastes (during the course of its lease) on a tract of land situated in Highland Industrial Park, Ouachita County, Arkansas. BEI admits that it disposed of hazardous waste on the subject property. The primary damage alleged by Highland in this present action is contamination of the groundwater with volatile organic compounds (VOC's). Highland argues that it is entitled to recovery for BEI's injury under remaining theories of common law trespass, negligence, breach of contract, and the Arkansas Hazardous Waste Management Act ("AHWMA"), as codified at §§ 8–7–201 *et seq.*. However, the sole issue presented by BEI on motion for partial summary judgment and by Highland on cross-motion for partial summary judgment is whether the proper measure of damage is diminution in value or the cost of restoration.

## STANDARD FOR SUMMARY JUDGMENT

The procedure for prosecution and disposition of a motion for summary judgement is governed by Rule 56 of the Federal Rules of Civil Procedure. Courts order summary judgment where "... there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law." Fed. R.Civ.P. 56(c). When the Court decides summary judgment on cross motions, the Court is not required to grant judgment for one side or the other if the Court finds a dispute of material fact. *Board of Trustees of University of Arkansas v. Professional Therapy Services, Inc.*, 873 F.Supp. 1280, 1283 (W.D.Ark.1995). However, the Court is required to take care to evaluate each motion individually, and construe the evidence and draw all reasonable inferences against the movant then under consideration. *See Heublein, Inc. v. U.S.*, 996 F.2d 1455, 1461 (2nd Cir.1993)(*citing Schwabenbauer v. Board of Education of Olean*, 667 F.2d 305 (2nd Cir.1981)). The movant must first show there are no genuine issues of facts material to the instant case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The burden then shifts to the non-movant to show that genuine issues of fact material to the dispute remain to be adjudicated in the trial setting. *Anderson*, at 256, 106 S.Ct. 2505; *Krenik v. County of Le Sueur*, 47 F.3d 953, 957. (8th Cir.1995). Where the record could not lead a rational trier of fact to find for the non-movant, there is no genuine issue for trial and the movant is entitled to judgment as a matter of law. *Anderson*, at 256, 106 S.Ct. 2505; *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir.1995). A dispute is genuine where the evidence could lead a reasonable jury to find for either party. *Anderson* at 251–

252, 106 S.Ct. 2505; *Westchem Agr. Chem. Inc. v. Ford Motor Co.*, 990 F.2d 426 (8th Cir.1993). A fact is material if it is outcome-determinative. *Anderson*, at 248, 106 S.Ct. 2505; *Get Away Club v. Coleman*, 969 F.2d 664, 666 (8th Cir.1992).

## DISCUSSION

Both parties request a Partial Summary Judgment on the sole issue of the appropriate measure of damages. At this juncture, Highland is proceeding under four theories of action: common law trespass, negligence, breach of contract, and the Arkansas Hazardous Waste Management Act. Because this Court finds that counsel appear to have confined their arguments only to the issue of the proper measure of damages for claims rising in trespass or negligence, the Court will only address the proper measure of damages should Highland prevail on their claims sounding in trespass or based on negligence. However, the Court notes that its finding today (that the proper measure of damages is remediation of the property) is in harmony with and buttressed by the remedy of remediation mandated by the Arkansas Hazardous Waste Act as well as the Arkansas Supreme Court finding of an implied duty to restore the surface of the land upon the termination of production pursuant to an oil and gas lease. *Bonds v. Sanchez–O'Brien Oil and Gas Co.*, 289 Ark. 582, 715 S.W.2d 444 (1986).

■ The law in Arkansas is clear that the proper measure of compensation for damage to property is either the cost of repair or restoration of the damaged property or the difference in the value of the property immediately before the damage and the value of the property immediately after the damage. *Bush v. Taylor*, 130 Ark. 522, 197 S.W. 1172 (1917) *see also* AMI Civil (4th ed.) 2222–25. The appropriate choice between the two measures

follows the characterization of the injury as either temporary or permanent. *Benton Gravel v. Wright,* 206 Ark. 930, 933–934, 175 S.W.2d 208 (1943). Determination of this characterization is a question of fact. *Id.* at 935, 175 S.W.2d 208. Because this distinction is a question of fact and not law, the determination is tied to the peculiar facts of a given damage and founded on common sense notions of what remedy will restore the plaintiff. It is axiomatic then, that restoration is the preferable remedy. However where restoration is not possible, because the damage is permanent, then diminution in value becomes the remedy that best effectuates the goal of compensatory damages.

BEI focuses its analysis, not on the reason for the remedy, but on the effect of the two measures, especially the potential disproportion of the cost of restoration to the cost of diminution in value. BEI argues that Highland "...should be limited to recovering the diminution in value of the allegedly contaminated parcel, effectively capping damages at the current fair market value of the property in a 'clean' condition. Plaintiff is not entitled to recover the 'cost of repair' because such cost would be unreasonable and grossly disproportionate to the fair market value of the real property in issue." BEI's Brief in Support p. 3 doc. 52. This Court has not found, nor has BEI provided any precedent where the Court determined that the damage was temporary and awarded restoration but capped that award at the diminution in value level. To the contrary, awards for rectification of hazardous waste contamination, often at costs 'grossly disproportionate' to land value, are regularly upheld and often statutorily mandated. BEI also bases it arguments on a proffered definition of 'permanent damage' gleaned from a tortured attempt to trace the development in Arkansas law of the concept that whether damage is permanent "depends upon its connection with the soil." *Bush* at 531, 197 S.W. 1172. This Court finds that Arkansas decisions are much more clear in their development of the concept that designation of damage as temporary hinges upon the potential for repair or restoration.

Highland's analysis begins with the threshold question of whether the damage is permanent or temporary. Highland is correct that the designation of the damage as temporary or permanent is central to the analysis, however, this Court finds that any analysis of the proper measure of damages must begin with a just comprehension of the reason we qualify a measure of damage as proper or improper in the first place. From this vantage, the case law, which may seem disjointed and inconsistent, resolves itself into a manifest and clear intent by the Arkansas Court to craft that remedy which will best compensate the loss, redress the injury or restore the condition to the extent possible given the particular and insular facts of the case at hand. The Arkansas Supreme Court specifically addresses importance of a proper consideration of these principles in *Bush v. Taylor:*

> The fundamental principle in all actions for damages is that just compensation be made to him who has suffered injury from another in his person or property, and, in order to give satisfaction, measured in money, such rules are formulated as are thought best adopted to accomplish this purpose.

130 Ark. 522, 530, 197 S.W. 1172 (1917) (quoting the Iowa Supreme Court). It is in the context of this overlying appreciation for the principle of just compensation that the oft-quoted Arkansas rule of connection with the soil is stated:

> [I]f the value of the property destroyed depends upon its connection with the soil, the measure of the damage is the difference in the value of the land before

and after the fire. But if the property destroyed could be replaced in substantially the condition in which it existed before the fire, then the measure of the damages is the cost of so replacing it. 130 Ark. at 531, 197 S.W. 1172. *See* Brill, Ark. Law of Damages (3rd ed.) § 30–1. The Arkansas Supreme Court has divided injury to land into two possible scenarios: one where the property destroyed could be replaced in substantially the condition in which it existed before and one where the property destroyed depends upon the connection with the soil. In other words, either the damage is temporary or permanent and the definition of temporary hinges on the possibility of restoration so that "the property destroyed could be replaced in substantially the condition in which it existed before." 130 Ark. at 531, 197 S.W. 1172.

This characterization by the Court of temporary or permanent provides the framework for the choice of remedy approved by the Court. The following cases are instructive. In *Bush* the Arkansas Court found that, where a fire destroyed a saw mill as well as equipment and inventory, an instruction of the measure of damages as diminution in value was improper because it did not properly compensate the plaintiff. The Court noted that because the lumber, saws, and buildings were capable of replacement, the proper measure of damages was the cost of replacement. 130 Ark. at 528, 197 S.W. 1172. In *Worthington v. Roberts,* the injury complained of involved the damage and destruction of trees on property improperly sprayed by a crop-duster. 304 Ark. 551, 803 S.W.2d 906 (1991). The Arkansas Supreme Court reminded, in dicta to the lower court on remand, that diminution in value was not the only possible remedy for damage to property and cautioned that a simple diminution in value measure might result in no recovery and thus be "unfair to a landowner who has suffered a loss with respect to

the use being made of the land." *Id.* at 557, 803 S.W. 906. The Court noted that the cost of restoration or replacement is a recognized measure of damage and in certain instances provides the only proper measure when diminution in value would result in no recovery despite substantial injury to the use to which the landowner had put the land. *Id.* at 558, 803 S.W.2d 906. In *First Electric Cooperative Corp. v Charette,* the plaintiff purchased acreage for a home site and pond and selectively cut the timber to promote the growth of large shade trees on the site. 306 Ark. 105, 810 S.W.2d 500 (1991). The utility company appealed the lower court decision allowing an instruction on replacement cost when that cost exceeded the purchase price of the property and where there was some testimony that the fair market value of the land actually increased after the trees were cut. *Id.* at 106, 810 S.W.2d 500. The Arkansas Supreme Court upheld the instruction. *Id.* at 107, 810 S.W.2d 500. *See also Revels v. Knighton,* 305 Ark. 109, 805 S.W.2d 649 (1991). In *C.R.T. Inc, v. Brown,* wastes from a asphalt hauling business contaminated and adjacent dairy farm. The Court ruled that although the cost of restoration of the land was "considerable," restoration of the land was the proper measure of damages. 269 Ark. 114, 117, 602 S.W.2d 409 (1980).

■ In addition to the cost of restoration, Arkansas Courts have allowed the recovery for the fair rental value for that time (if any) the owner loses use of the property at issue. *See* Brill § 30–1. However, the Court does not find that proper measure of temporary damages contemplates, as argued by Highland, the recovery of any residual loss of fair market value of the land following restoration.

Armed with the direction of the Arkansas Court on determination of the most appropriate measure of damages in injury

to property, and standing in the posture of summary judgment, the Court now turns to the evidence before it on the nature of the damage alleged in the case at bar. The Court need not reach the question of the amount of damages but rules today only upon the factual characterization of the damage and the appropriate calculation or measure of damage that follows such characterization. There is ample evidence and no real dispute of the specific chemicals found in the groundwater on the site. There is ample evidence from reports and affidavits of the amenability of such contamination to removal from the groundwater by air-stripping and carbon-absorption. Reasonable estimations of cost and time required are present by affidavit from competent sources. The Court finds that, even construing the evidence and inferences in favor of BEI, there are sufficient facts in evidence so that no reasonable jury would not find the damage remediable and therefore temporary.

## DECISION

■ Because there is no genuine dispute of the facts material to the nature of the damages alleged in this action or the potential for effective remediation at a calculable cost and reasonably fixed period of time, the Court finds that no reasonable jury would not conclude that the damage was capable of remediation and therefore that the damage is temporary. With no genuine dispute over the material fact of the temporary nature of the injury, this Court rules as a matter of law that the appropriate measure of damages for the alleged groundwater contamination is the cost of the remediation of the contamination plus loss of the fair rental value, if any, before the remediation renders the property fit for the use and enjoyment of the owner.

IT IS SO ORDERED.